UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

IN RE:

    JOSEPH R. JACKSON,

              Lawyer.

NO:  13-MC-0007-TOR

REPORT AND RECOMMENDATION

    THIS MATTER COMES BEFORE the Court based on a referral from Chief Judge Peterson pursuant to Local Rule 83.3.  The undersigned Judicial Officer was charged with conducting a disciplinary hearing and issuing a report and recommendation pursuant to Local Rule 83.3(e) and (f).  A hearing was held on November 14, 2013.  Joseph R. Jackson appeared pro se.  The Court makes the following findings of fact, conclusions of law and recommendation:

    1.   The allegations of misconduct are set forth in the Motion for Disciplinary Referral of Attorney, ECF No. 40, filed in the United States Bankruptcy Court for the Eastern District of Washington in case number 10-06985-PCW7, a copy of which is attached hereto.

REPORT AND RECOMMENDATION ~ 1

2.    Joseph R. Jackson (hereinafter referred to as "Respondent") filed a Response to Motion for Referral, ECF No. 43, case number 10-06985-PCW7, a copy of which is also attached hereto.

3.    Chief Judge Peterson issued an order to show cause on July 15, 2013 as to why Joseph R. Jackson should not be disciplined for repeated violations of Bankruptcy Court orders and violations of Washington's Rules of Professional Conduct.  ECF No. 1, in the above entitled case.

4.    On August 12, 2013, Respondent filed his Response to Order to Show Cause.  ECF No. 2.[1]  Respondent "do[es] not deny any of the facts asserted in the original referral."  *Id*. at 1.

## I.    VIOLATIONS AND PRESUMPTIVE SANCTIONS

**<u>Mathena Case</u>**

5.    In Bankruptcy Case No. 10-06985-PCW7 ("Mathena Case"), Respondent was ordered to disgorge the fees paid to him by the Summer Mathena, the Debtor, by January 7, 2013, and to reimburse the Debtor for her attorney's fees in the adversary proceeding by February 5, 2013, and pay the $1,000 sanction by March 7, 2013.  *See* Case No. 10-06985-PCW7, ECF No. 40 at 2.  Respondent was also

---

[1] ECF No. references without a corresponding bankruptcy case number relate to this case, 13-MC-0007-TOR.

REPORT AND RECOMMENDATION ~ 2

ordered to file a receipt with the Bankruptcy Court signed by the Debtor

acknowledging full payment.

6.    Respondent had not made these payments by May 20, 2013.  *See* Case No.

10-06985-PCW7, ECF No. 43 at 1.

7.    As of August 12, 2013, Respondent claims to have paid the money owed.

*See* ECF No. 2 at 2-3.  Respondent explained that he does not have a lucrative

practice and this is why he did not timely pay the amounts due.  *Id*.  Respondent

did not file a receipt with the Bankruptcy Court as he was ordered.

8.    The Court finds that the above conduct amounts to a knowing failure to

comply with a court order.

9.    This conduct injured the client by depriving her of funds to which she was

entitled for a period of several months.  This conduct also resulted in injury to the

orderly administration of the legal system.

10.  The presumptive sanction for this conduct is suspension under ABA

Standard 6.22:

> **Suspension** is generally appropriate when a lawyer knows that
> he or she is violating a court order or rule, and causes injury or
> potential injury to a client or a party, or causes interference or
> potential interference with a legal proceeding.

11.  Also in the Mathena Case, the Bankruptcy Court found that Respondent

failed to keep the Debtor properly informed about the status of her case, and failed

REPORT AND RECOMMENDATION ~ 3

to obtain the Debtor's consent prior to taking actions on her behalf.  Respondent

has not disputed this finding. Case No. 10-06985-PCW7, ECF No. 38.  Respondent

was sanctioned $1,000 by the Bankruptcy Court.  *Id*.

12. The above conduct violates RPC 1.4, which requires an attorney to keep the

client informed about the representation, and RPC 1.2(f), which prohibits an

attorney from acting for a client without authority.

13. The Court finds that Respondent acted negligently with respect to the above

violations.

14. These violations resulted in potential injury to the client, as the client was

deprived of important information and was deprived of her right to control the

progression of the case.

15. The presumptive sanction for these violations is reprimand under ABA

Standard 4.43:

> a. **Reprimand** is generally appropriate when a lawyer is negligent
> and does not act with reasonable diligence in representing a
> client, and causes injury or potential injury to a client.

**Parker Case**

16. In Bankruptcy Case No. 10-00268-FLK7 ("Parker Case"), on September 7,

2010, Respondent was ordered to disgorge all amounts paid to him by the Parkers,

the Debtors, and to file a receipt signed by the Debtors indicating full payment to

them.  *See* Case No. 10-00268-FLK7, ECF No. 24.

REPORT AND RECOMMENDATION ~ 4

17. Respondent never provided the Bankruptcy Court with a receipt signed by the Debtors showing that he disgorged his fees and paid them in full.

18. On August 12, 2013, Respondent claimed he paid the Parkers on August 25, 2010, but they did not give him a signed receipt.  ECF No. 2 at 3.  On August 27, 2010, Respondent filed an unsigned statement in the Bankruptcy Court that he mailed the Parkers a check.  Case No. 10-00268-PCW13, ECF No. 22.  That did not satisfy the Bankruptcy Court's order.

19. The Court finds that the above conduct amounts to a negligent failure to comply with a court order.

20. This conduct resulted in a potential injury to the orderly administration of the legal system.

21. The presumptive sanction for this conduct is reprimand under ABA Standard 6.23:

> **Reprimand** is generally appropriate when a lawyer negligently fails to comply with a court order or rule, and causes injury or potential injury to a client or other party, or causes interference or potential interference with a legal proceeding.

**<u>Vinson Case</u>**

22. In Bankruptcy Case No. 10-05135-PCW7 ("Vinson Case"), on January 3, 2011, Respondent was ordered to disgorge all amounts paid to him by Vinson, the

REPORT AND RECOMMENDATION ~ 5

Debtor, and to file a receipt signed by the Debtor indicating full payment to her. *See* Case No. 10-05135-PCW7, ECF No. 21.

23.  Respondent never provided the Bankruptcy Court with proof that he disgorged his fees and paid the Debtor in full.

24. On August 12, 2013, Respondent claimed he re-filed another bankruptcy case for Vinson when she was eligible, and thus, he did not reimburse her for the fees he was ordered to pay her.  ECF No. 2 at 3-4.  At the hearing before this Court, Respondent indicated that reimbursing the client pursuant to the Bankruptcy Court's order "just seemed like kind of a pointless step" since the client wished to have him file another case.  Respondent does not contest that he did not file proof of reimbursement with the Bankruptcy Court.

25. This conduct resulted in injury to the orderly administration of the legal system, as Respondent unilaterally disregarded the Bankruptcy Court's instruction that he reimburse the client.

26. The presumptive sanction for this conduct is suspension under ABA Standard 6.22:

> **Suspension** is generally appropriate when a lawyer knows that he or she is violating a court order or rule, and causes injury or potential injury to a client or a party, or causes interference or potential interference with a legal proceeding.

REPORT AND RECOMMENDATION ~ 6

**Inaccuracies in Income and Expense Reporting**

27. The United States Trustee outlined eight cases in which Respondent prepared "Statements of Current Monthly Income and Means Test Calculation" for his clients. *See* Case No. 10-06985-PCW7, ECF No. 40 at 4-5. The claimed amount of monthly income or expense in these eight cases was wrong by hundreds or thousands of dollars.

28. Respondent does not deny the inaccuracy of the Means Test Forms filed in his cases. Respondent explained that he usually asks his clients "if their income has been steady so that their six month average would match their two month average" then asks "them for only the last two months (sic) pay stubs." ECF No. 2 at 5. Respondent further explained that if he "could charge more for each case, [he] could spend extra hours carefully analyzing their income and expenses." *Id.* at 6. Respondent said that, "I choose to charge less and have less time spent on data gathering and analysis." *Id.* at 6-7. Respondent further explained that "I have no choice but to rely on the data the client supplies. If I have any reason to suspect the data is not accurate, I have a duty of further inquiry but expecting more than that is unrealistic." *Id.* at 6.

29. The above conduct violates RPC 3.3, which prohibits providing false information to a court, and RPC 3.4, which prohibits an attorney from providing false evidence or otherwise obstructing another party's access to evidence.

REPORT AND RECOMMENDATION ~ 7

30.  The Court finds that Respondent acted negligently with respect to the above violations.

31. These violations resulted in injury to the orderly administration of the legal system, as the United States Trustee was required to expend resources ferreting out the inaccuracies.

32. The presumptive sanction for these violations is reprimand under ABA Standard 6.13:

> **Reprimand** is generally appropriate when a lawyer is negligent either in determining whether statements or documents are false or in taking remedial action when material information is being withheld, and causes injury or potential injury to a party to the legal proceeding, or causes an adverse or potentially adverse effect on the legal proceeding.

**Warren Case**

33. In Bankruptcy Case No. 12-03572-PCW7 ("Warren Case"), the Debtor's Means Test Form indicated that the Debtor, Mr. Warren, was paying $1,250 in support to his ex-wife.  The United States Trustee determined that the Debtor was actually receiving this $1,250 in support from his ex-wife.  Effectively, this is a $2,500 mistake.  The Debtor claimed he told Respondent the correct information.  The Debtor also indicated that the schedules omitted hundreds of dollars in expenses.  *See* Case No. 10-06985-PCW7, ECF No. 40 at 7.

34. Respondent admitted that his office had made the $1,250 error while preparing the schedules.  During the bankruptcy proceeding, Respondent admitted on the record that he intentionally did not include all of the Debtor's expenses on the schedules so that it would appear that the Debtor could afford to reaffirm the payments on his pickup truck and the Court would approve that reaffirmation agreement.  *See* Case No. 10-06985-PCW7, ECF No. 40 at 7.

35. Before this Court, Respondent explained with respect to preparation of the schedules for Mr. Warren, "the numbers he gave me for his expenses didn't work and I adjusted them.  Because I was trying to cover a $2500 gap between income and expenses, I adjusted them a lot… I adjusted his budget because I knew his expenses did not greatly exceed his income.  He accepted the numbers I used.  It turns out there was a false assumption in there which greatly skewed the result."  ECF No. 2 at 4.

36. The above conduct violates RPC 3.3, which prohibits providing false information to a court, and RPC 3.4, which prohibits an attorney from providing false evidence or otherwise obstructing another party's access to evidence.

37.  The Court finds that Respondent acted knowingly with respect to the above violations.

38. These violations resulted in potential injury to the Debtor's creditors and to the orderly administration of the legal system, as the Debtor presumably would

REPORT AND RECOMMENDATION ~ 9

1  have qualified to proceed with a Chapter 7 bankruptcy had the error and

2  falsifications not been discovered.

3      39. The presumptive sanction for these violations is suspension under ABA

4  Standard 6.12:

> **Suspension** is generally appropriate when a lawyer knows that
> false statements or documents are being submitted to the court
> or that material information is improperly being withheld, and
> takes no remedial action, and causes injury or potential injury to
> a party to the legal proceeding, or causes an adverse or
> potentially adverse effect on the legal proceeding.

**McMahan Case**

10     40. In Bankruptcy Case No. 12-03105-PCW7 ("McMahan Case"), the Debtors'

11  monthly income was understated by about $2,500.  The Debtor, Mr. McMahan

12  testified that he received a large pre-petition bonus during the six month period

13  prior to filing.  Mr. McMahan testified that he did not realize that he needed to

14  include the bonus as monthly income, however he testified that he gave all his

15  payment advices, including those showing the bonus, to Respondent before the

16  case was filed.  *See* Case No. 10-06985-PCW7, ECF No. 40 at 8.

17     41. The United States Trustee requested copies of the payment advices from

18  Respondent for the six month pre-petition period.  Respondent did not provide the

19  payment advices for the periods involving the bonus.  Respondent ignored the

20  Trustee's repeated requests for those missing payment advices.  Several months

REPORT AND RECOMMENDATION ~ 10

later, on March 20, 2013, the United States Trustee obtained a court order compelling the Debtor to amend his schedules to reflect the correct information. Case No. 12-03105-PCW7, ECF No. 33.

42. Respondent explained that he confirmed Mr. McMahan's pay stubs matched his claimed salary.  ECF No. 2 at 6.  Respondent claims that if he had studied his year to date income, he would have seen an apparent discrepancy meriting further inquiry." *Id*.  Respondent does not address why he did not turn over Mr. McMahan's pay advices showing the bonus payments when the discrepancy was brought to his attention and despite repeated requests for the documents.

43. The above conduct violates RPC 3.3, which prohibits providing false information to a court, and RPC 3.4, which prohibits an attorney from providing false evidence or otherwise obstructing another party's access to evidence.

44.  The Court finds that Respondent acted negligently with respect to the above violations.

45. These violations resulted in injury to the orderly administration of the legal system, as the United States Trustee was required to expend resources identifying the error and obtaining a subpoena ordering Respondent to produce the subject pay advices reflecting Mr. McMahan's bonus payments.

46. The presumptive sanction for these violations is reprimand under ABA Standard 6.13:

REPORT AND RECOMMENDATION ~ 11

> **Reprimand** is generally appropriate when a lawyer is negligent either in determining whether statements or documents are false or in taking remedial action when material information is being withheld, and causes injury or potential injury to a party to the legal proceeding, or causes an adverse or potentially adverse effect on the legal proceeding.

## II.    AGGRAVATING AND MITIGATING FACTORS

47. The "multiple offenses" aggravating factor applies "where an attorney faces multiple counts of violating the RPCs." *In re Disciplinary Proceeding against Starczewski*, 177 Wash.2d 771, 792 (2013).  The multiple offenses factor applies here because Respondent has been found to have violated multiple RPCs.

48. The "pattern of misconduct" aggravating factor applies where "a series of acts of misconduct are alleged in one complaint." *In re Disciplinary Proceeding against Kamb*, 177 Wash.2d 851, 867 (2013).  The pattern of misconduct factor applies here because Respondent repeatedly failed to conduct an adequate inquiry into the accuracy of income and expenses reported on his clients' Statements of Current Monthly Income and Means Test Calculations.

49. The "substantial experience in the practice of law" aggravating factor applies because Respondent has over 30 years' experience practicing law.

50. The "indifference to making restitution" aggravating factor applies because Respondent delayed restitution payments to Ms. Mathena for several months after he was ordered to do so by the Bankruptcy Court.

51. The Court finds that no mitigating factors apply.  Respondent's alleged inability to reimburse Ms. Mathena in a timely manner due to a lack of funds is not a relevant circumstance, as an attorney's personal financial problems are generally not considered to be a mitigating factor.  *In re Disciplinary Proceeding against Starczewski*, 177 Wash.2d 771, 794 (2013).

## III.    RECOMMENDATION

52.  Departure from a presumptive sanction is only appropriate when "the balance of aggravating and mitigating factors is sufficiently compelling."  *In re Disciplinary Proceeding against Rodriguez*, 177 Wash.2d 872, 888 (2013).  "The weight given to mitigating factors depends on the totality of the circumstances."  *Id.* at 901.  "If suspension is the presumptive sanction, the baseline period of suspension is presumptively six months."  *In re Disciplinary Proceeding against McGrath*, 174 Wash.2d 813, 831 (2012).  This period is "better characterized as a 'presumptive starting point' rather than a 'minimum.'"  *Id.* at 832 (citation omitted).  "The suspension period may increase or decrease depending on the number of acts of misconduct, the seriousness of the misconduct, and the mitigating and aggravating factors.  *Id.* (footnote omitted).

53.      The Court finds no basis for departing from the presumptive sanctions outlined above, the most severe of which is suspension.  Nor does the Court find any reason to depart from the presumptive suspension period of six

months.  The Court therefore respectfully recommends that Respondent be suspended from the practice of law before the Courts of the Eastern District of Washington for a period of six months.

54.    The Court further recommends that this proceeding be reported to the Washington State Bar Association in accordance with RPC 8.3.

**ACCORDINGLY, IT IS ORDERED:**

1.  Joseph R. Jackson shall file a response, if any, within 21 days after service of this Report and Recommendation upon him through the electronic court filing system.

2.  This matter is now referred back to Chief Judge Peterson for further proceedings.

The District Court Executive is hereby directed to enter this Report and Recommendation and furnish copies to Joseph R. Jackson and Chief Judge Peterson.

**DATED** November 18, 2013.



THOMAS O. RICE
United States District Judge

REPORT AND RECOMMENDATION ~ 14

1  JAMES D. PERKINS, WSBA #12996
   Attorney for the United States Trustee
2  United States Dept. of Justice
   920 West Riverside, Room 593
3  Spokane, WA  99201
   Telephone (509) 353-2999
4  Fax (509) 353-3124

5

6

7                    **UNITED STATES BANKRUPTCY COURT**
                      **EASTERN DISTRICT OF WASHINGTON**

8    In re:
9                                        Case No.  10-06985-PCW7

10   Summer K. Mathena                   UNITED STATES TRUSTEE'S MOTION
                                         FOR REFERRAL OF ATTORNEY FOR
11              Debtor                   DISCIPLINARY PROCEEDINGS

12

13        Gail Brehm Geiger, the Acting United States Trustee for Region 18 (the "United

14   States Trustee"), by and through her attorney, James D. Perkins, moves for a referral of

15   attorney Joseph Jackson to the United States District Court for disciplinary proceedings

16   pursuant to District Court Local Rule 83.3(b), along with such supplemental relief as is

17   appropriate.

                              **BASIS FOR RELIEF**
18

19        District Court Local Rule 83.3(b) provides a procedure for the initiation of attorney

20   disciplinary proceedings leading to disbarment, suspension, or a reprimand by the

21   District Court on the written recommendation of a bankruptcy judge of this Court to the

22   chief judge of the District Court.  Such discipline must be based on either:

23        a)     Conduct violating the Rules of Professional Conduct of the Washington

24               State Bar; or

25        b)     Non-compliance with either the rules or the orders of the Court.

26   District Court Local Rule 83.3(a).  The United States Trustee asserts that attorney

27

28   Motion for Disciplinary Referral of Attorney - 1

1   Joseph Jackson (Mr. Jackson) should be referred to the District Court for discipline for

2   both of the reasons listed above, as set out in more detail below.

3

4   **I.    MR. JACKSON HAS NOT COMPLIED WITH THE ORDERS OF THIS COURT**

5   A.  <u>In This Case</u>

6       1.  On November 7, 2012 the Court entered an order in this case requiring Mr.

7           Jackson to (a) refund to the Debtor in this case all amounts she had paid him in

8           connection with both this and a prior case he filed for her (Case No. 07-01639-

9           FLK7), (b) reimburse the Debtor for all amounts she incurred defending herself in

10          connection with Adversary Proceeding No. 11-80051-PCW brought against her

11          by the United States Trustee, and (c) pay a sanction of $1,000 to the Court.

12          Docket #38 (the "Mathena Order").  This Order was based on Mr. Jackson's

13          numerous failures to properly represent the Debtor in this and her prior case and

14          was not contested by Mr. Jackson.

15      2.  Mr. Jackson asked for an extended period of time in which to pay these amounts,

16          which request was granted by the Court.  The Mathena Order requires Mr.

17          Jackson to disgorge the fees paid to him by the Debtor by January 7, 2013,

18          reimburse the Debtor for her attorney's fees in the adversary proceeding by

19          February 5, 2013, and pay the $1000 sanction by March 7, 2013.  In addition, the

20          Mathena Order requires Mr. Jackson to file with the Court a receipt signed by the

21          Debtor indicating his full payment to the Debtor of the amounts identified in the

22          order by February 5, 2013.

23      3.  As of the date of this motion, the court file in this case does not reflect either the

24          payment of the ordered sanction or the filing of the receipt required by the

25          Mathena Order.  In addition, the United States Trustee has confirmed with new

26

27

28      Motion for Disciplinary Referral of Attorney - 2

counsel for the Debtor that Mr. Jackson has not paid the Debtor any funds under the Mathena Order.

4. Based on all of the above, the United States Trustee asserts that Mr. Jackson has not complied with the terms of the Mathena Order.

B. <u>In re Parker, Case No. 10-00268-FLK7 and In re Vinson, Case No. 10-05138-PCW7</u>

1. <u>In re Parker</u>.  Mr. Jackson filed a Chapter 7 bankruptcy case (Case No. 10-00268-FLK7) for the Debtors even though they were ineligible for discharge because they had received a Chapter 7 discharge in a case filed less than 8 years prior.  When the United States Trustee contacted Mr. Jackson about this, he initially indicated that he would work with the Debtors to convert their case to a Chapter 13 proceeding.  However, he failed to take any action to correct the situation. The Debtors testified under oath at their Section 341 Creditor's Meeting that they had discussed their prior case with Mr. Jackson and he advised them that it would not prevent them from obtaining a discharge in their new case. Based on this conduct, the Court ordered Mr. Jackson to disgorge all amounts paid to him by the Parkers in connection with the second case. See Case No. 10-00268-FLK7, Docket #24.

2. <u>In re Vinson</u>.  Similarly, Mr. Jackson filed a Chapter 7 case for the Debtor even though he either knew or should have known that she was ineligible for discharge because she had received a Chapter 7 discharge in a prior case he had filed for her less than 8 years prior.  When the United States Trustee contacted Mr. Jackson about this, he failed to take any action to correct the situation or even respond to the United States Trustee's inquiry. Based on this conduct, the Court ordered Mr. Jackson to disgorge all amounts paid to him by Ms. Vinson in connection with the second case. See Case No. 10-05135-PCW7, Docket #21.

Motion for Disciplinary Referral of Attorney - 3

3. In both the <u>Parker</u> case and the <u>Vinson</u> case the Court's orders directing disgorgement required Mr. Jackson to file with the Court a receipt signed by the Debtors indicating full payment by Mr. Jackson of the amounts identified in the applicable order.  As of the date of this motion, neither the <u>Vinson</u> nor the <u>Parker</u> court file reflects the filing of the required receipt.  The United States Trustee does not currently know whether Mr. Jackson disgorged these fees to the clients as ordered by this Court.

4. Based on all of the above, the United States Trustee asserts that Mr. Jackson has not complied with the terms of the <u>Vinson</u> and <u>Parker</u> Orders.

II. **MR. JACKSON HAS REPEATEDLY VIOLATED THE WASHINGTON RULES OF PROFESSIONAL CONDUCT IN HIS REPRESENTATION OF CLIENTS IN THIS COURT**

A. <u>Mr. Jackson Repeatedly Violated the Rules of Professional Conduct In This Case</u>

1. In connection with entry of the Mathena Order, the Court made a finding that Mr. Jackson's conduct in this case was deficient in several ways, including (1) failing to keep the Debtor properly informed about the status of her case, and (2) failing to obtain the Debtor's consent prior to taking actions on her behalf.

2.  This conduct violated, at a minimum, RPC 1.2(f) which prohibits an attorney from acting for a client without authority, and RPC 1.4 which requires an attorney to keep the client informed about the representation.

B. <u>Mr. Jackson Violated the Rules of Professional Conduct in Various 2012 Chapter 7 Cases</u>

1. In the course of reviewing Chapter 7 cases for Section 707(b) abuse, the United States Trustee has noticed that the income and expense figures listed on the Statements of Current Monthly Income and Means Test Calculation (also

Motion for Disciplinary Referral of Attorney - 4

1    referred to as "Means Test Forms") filed in Mr. Jackson's cases are often

2    substantially wrong.  In cases filed by Mr. Jackson in calendar year 2012, the

3    United States Trustee has found and investigated the following cases with

4    substantial discrepancies:

| Case Name and Number | | Stated Amount of Income or Expense | Correct Amount of Income or Expense |
|---|---|---|---|
| a. | In re Harris, Case No. 12-00090 | $2090/month | $3800/month |
| b. | In re Kincaid, Case No. 12-02244 | $5833/month | $4600/month |
| c. | In re Montoya, Case No. 12-02472 | $8400/month | $8725/month |
| d. | In re Reiman, Case No. 12-02739 | $8500/month | $9600/month |
| e. | In re McMahan, Case No. 12-03105 | $5000/month | $7500/month |
| f. | In re Kenoyer, Case No. 12-03305 | $7000/month | $5400/month |
| g. | In re Barrows, Case No. 12-03909 | $4100/month | $5300/month |
| h. | In re Toften, Case No. 12-05011 | $5100/month | $7400/month |

15    A more detailed description of each of these cases, including the impact of these

16    errors on the outcome of each case, is contained in Exhibit A to this Motion.

17   2. As this Court is aware, accurate preparation of the Means Test Form is a critical

18      part of an attorney's representation of a debtor in a Chapter 7 case.  As reflected

19      above, Mr. Jackson's preparation of that document for his clients is regularly

20      wrong by hundreds or thousands of dollars per month.  These misstatements

21      lead to review of the case by the United States Trustee's office, to delay of the

22      case, often to the need to dismiss the case or convert to Chapter 13, and to the

23      potential for denial of the client's discharge for filing false statements made under

24      oath.

25   3. If these regular inaccuracies are the result of Mr. Jackson's inability or

26      unwillingness to correctly calculate his client's income, then they indicate that he

27

28    Motion for Disciplinary Referral of Attorney - 5

1    is not competent to practice law as a debtor's attorney, in violation of RPC 1.1.  If

2    these inaccuracies are the result of an intentional decision by Mr. Jackson and/or

3    his client to falsely report income and/or expenses, then they are a violation of

4    RPC 1.2(d) which prohibits an attorney from counseling a client to commit

5    fraudulent or criminal behavior, RPC 3.2 which prohibits providing false

6    information to a court, and RPC 3.4 which prohibits deceitful conduct, conduct

7    prejudicial to the administration of justice, and conduct demonstrating an

8    unfitness to practice law. Finally, this pattern implicates the provisions of 11

9    U.S.C. §707(b)(4)(D) which provides that Mr. Jackson's signature on a

10    bankruptcy petition is a certification that he has no knowledge after an inquiry

11    that the information in the schedules filed with the petition is incorrect.

12

13    C.  <u>Mr. Jackson Violated the Rules of Professional Conduct in In re Warren, Case No.</u>

14       <u>12-03572-PCW7</u>

15    1.  Mr. Warren's schedules indicate that he is paying his ex-wife $1,250 per month in

16       support, which leaves him with no disposable income to pay his creditors.

17       However, the United States Trustee's investigation has determined that Mr.

18       Warren is not paying, but instead receiving, the support payments in the amount

19       of $1,250 per month.  This change would both increase Mr. Warren's income by

20       $1,250 per month and reduce his expenses by the same amount, resulting in an

21       additional $2,500 per month of disposable income for Mr. Warren.

22    2.  The United States Trustee recently conducted a Rule 2004 Exam of Mr. Warren

23       in order to learn how his Means Test Form and Schedules I & J could have been

24       so wrong in this regard.  At the Rule 2004 Exam, Mr. Warren was very forthright

25       about this inaccuracy in his statements and schedules and testified that he had

26       provided the correct information to Mr. Jackson who had then prepared his

27

28    Motion for Disciplinary Referral of Attorney - 6

1    bankruptcy documents with erroneous information.  Mr. Jackson then indicated

2    on the record that this was correct and produced a questionnaire prepared by Mr.

3    Warren correctly listing the support as income to him, not as an expense.  Mr.

4    Jackson further indicated that his office had made the error in preparing the

5    schedules.  Mr. Warren testified that he had reviewed the schedules before

6    signing, but had not noticed this error.

7    3. Mr. Warren was then asked about the effect of this error on his disposable

8    income.  He reviewed his Schedule J and determined that many of his monthly

9    expenses were not listed on it.  Upon reviewing the questionnaire he had

10    provided to Mr. Jackson's office, it was determined that hundreds of dollars of Mr.

11    Warren's monthly expenses had not been listed on Schedule J.  Mr. Warren

12    testified that he did not know why that had happened.  Mr. Jackson then

13    indicated on the record that he had made the decision not to include all of Mr.

14    Warren's expenses on Schedule J.  Mr. Jackson further indicated that he had

15    done that intentionally so that it would appear that Mr. Warren could afford to

16    reaffirm the payments on his pickup truck and the Court would approve that

17    reaffirmation agreement.

18    4. These actions again cast doubt on Mr. Jackson's competence to practice law as

19    a debtor's attorney in violation of RPC 1.1, but more importantly violate RPC 3.1

20    which prohibits advancing non-meritorious claims, RPC 3.2 which prohibits

21    providing false information to a court, and RPC 3.4 which prohibits deceitful

22    conduct, conduct prejudicial to the administration of justice, and conduct

23    demonstrating an unfitness to practice law.

24

25    D. <u>Mr. Jackson Violated the Rules of Professional Conduct in In re McMahan, Case</u>

26    <u>#12-03105-PCW7</u>

27

28    Motion for Disciplinary Referral of Attorney - 7

1. This is one of the cases discussed above in which the Debtors' income was dramatically understated, in this case by about $2500 per month.  The reason for that understatement was that Mr. McMahan received a large bonus during the six month pre-petition measuring period and that bonus was not included in the calculation of his monthly income.[1]

2. Mr. McMahan testified at a Rule 2004 Exam that he did not realize that he needed to include this bonus income and had simply put down his regular monthly salary on the information he gave to Mr. Jackson to prepare the statements and schedules.  However, he also testified that he gave all of his payment advices, including those with the bonus payments, to Mr. Jackson before the case was filed.

3. Despite Mr. Jackson having Mr. McMahan's payment advices, when the United States Trustee requested copies of the Debtors' payment advices for the six month measuring period, Mr. Jackson initially did not provide those for the bonus periods.  Mr. Jackson thereafter simply ignored the United States Trustee's repeated requests for those missing payment advices, until several months later, after the United States Trustee obtained a court order and served on him a subpoena compelling production of those documents.

4. Mr. Jackson's failure to produce those payment advices which disclosed this bonus, while producing those payment advices which were consistent with the income figure on the B22 form, suggests that he intentionally withheld those payment advices which were damaging to his clients' case.  Mr. Jackson's conduct in this case appears to violate both RPC 3.4 which prohibits deceitful conduct, conduct prejudicial to the administration of justice, and conduct

[1] 11 U.S.C. §101(10A) provides that Current Monthly Income means the income from all sources received by the Debtor during the six calendar months preceding the filing of the petition for relief, which includes this bonus.

Motion for Disciplinary Referral of Attorney - 8

1   demonstrating an unfitness to practice law, and 11 U.S.C. §707(b)(4)(D) which

2   provides that Mr. Jackson's signature on a bankruptcy petition is a certification

3   that he has no knowledge after an inquiry that the information in the schedules

4   filed with the petition is incorrect.

5

6                          **REQUEST FOR RELIEF**

7

8           Based on all of the foregoing conduct, it is both appropriate and necessary to

    discipline Mr. Jackson.  Mr. Jackson has repeatedly demonstrated both his inability to
9
    properly represent his clients and his unwillingness to provide this Court with honest and
10
    forthcoming information about his clients' cases.  When this Court has attempted to correct
11
    Mr. Jackson's conduct through the use of sanctions, Mr. Jackson has simply ignored those
12
    sanction orders.  Accordingly, the court is respectfully requested to refer attorney Joseph
13
    Jackson to the United States District Court for disciplinary proceedings pursuant to District
14
    Court Local Rule 83.3(b), along with any such supplemental relief as the Court believes is
15
    appropriate.
16
      Dated: April 29, 2013
17
                                      Respectfully submitted,
18
                                      GAIL BREHM GEIGER
19                                    Acting United States Trustee

20                                    /S/ James D. Perkins
                                      JAMES D. PERKINS
21                                    Attorney for the United States Trustee

22

23

24

25

26

27

28   Motion for Disciplinary Referral of Attorney - 9

EXHIBIT A

Case Summaries

1. *In re Harris, Case No. 12-00090*.  The Means Test Form indicates that the Debtor's income is $2,090 per month.  The United States Trustee conducted a full review of the Debtor's financial situation, including reviewing all of the Debtor's payment advices for the six months pre-petition measuring period.  That review indicated that the Debtor's correct income on his Means Test Form should have been almost $1,800 per month higher than the scheduled amount.

2. *In re Kincaid, Case No. 12-02244*.  The Means Test Form indicates that the Debtor's income is $5,833 per month.  Again, following a full review of the Debtor's financial situation, the United States Trustee determined that the Debtor's correct income for his Means Test Form was actually $1,200 per month <u>lower</u> than the amount listed by the Debtor on the Means Test Form.

3. *In re Montoya, Case No. 12-02472*.  The Means Test Form indicates that the Debtors' combined gross income is approximately $8,400 per month.  The United States Trustee's complete review of the Debtors' payment advices indicated that the Debtors' correct income on their Means Test Form was approximately $325 per month higher than the amount listed by the Debtor on the Means Test Form, which caused the presumption of abuse to arise.

4. *In re Reiman, Case No. 12-02739*.  The Means Test Form indicates that the Debtor's household income is approximately $8,500 per month.  The United States Trustee's complete review of the Debtor's payment advices indicated that the Debtor's correct household income on the Means Test Form was approximately $9,600 per month, which put the Debtor above the applicable median income.

1    5.  *In re McMahan, Case No. 12-03105.*  The Means Test Form indicates that the

2        Debtors' income is $5,000 per month.  The United States Trustee's complete

3        review of the Debtors' payment advices indicated that the Debtors' correct

4        income on their Means Test Form was approximately $2,500 per month higher

5        than the amount listed by the Debtors on the Means Test Form, again putting

6        them above the applicable median income.

7    6.  *In re Kenoyer, Case No. 12-03305.*  The Means Test Form indicates that the

8        Debtors' income is approximately $1,000 per month above the median income

9        for their household size, but that the presumption of abuse does not arise.  The

10       United States Trustee conducted a full review of the Debtors' financial situation

11       which indicated that the Debtors' expenses were overstated by approximately

12       $1,600 per month.  However that review also determined that the Debtors'

13       income on their Means Test Form had been overstated by approximately $800

14       per month, which offset the inaccurate statement of expenses so that the

15       presumption of abuse still did not arise.

16   7.  *In re Barrows, Case No. 12-03909.*  The Means Test Form indicates that the

17       Debtors' household income is $4,100 per month.  The United States Trustee's

18       complete review of the Debtors' payment advices indicated that the Debtors'

19       correct income on their Means Test Form was approximately $1,200 per month

20       <u>lower</u> than the amount listed by the Debtor on the Means Test Form.

21   8.  *In re Toften, Case No. 12-05011.*  The Means Test Form indicates that the

22       Debtors' income is approximately $5,100 per month.  The United States

23       Trustee's complete review of the Debtors' payment advices indicated that the

24       Debtors' correct income on their Means Test Form was approximately $7,400 per

25       month, which is above the applicable median income.

26

27

28   Motion for Disciplinary Referral of Attorney - 11

1 | JOSEPH R. JACKSON
JACKSON LAW OFFICES, P.S.
2 | 230 Grant Road, Suite B-23
East Wenatchee, WA 98802
3 | (509) 884-7400

4

5 | UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WASHINGTON

6 | In RE:                                    )    CHAPTER 13
                                            )
7 | MATHENA, SUMMER ,                         )    No. 10-06985
                                            )
8 |         Debtor.                          )    RESPONSE TO MOTION
                                            )    FOR REFERRAL
9

10        When the court ordered in November 2012 that I pay certain sanctions, my concern was not the

11 payment but the timing. Representing debtors who by definition have little assets, the fees I can charge

are constrained by the abilities of my clients. Especially in winter, when it is too cold for people to be
12
out much, filings are down and my income is limited. My average revenue in a case is $600. To keep
13
my office open and pay my modest salary of $5000.00 requires filing at least 14 cases per month. This
14
year nationwide and in this district total filings have been down 14% so I have been doing good to file
15
14 cases a month. I have been continually waiting for excess income so I could pay the sanctions, but

16 we have barely made payroll and paid the rent and other necessary office expenses this year. Many times

my salary has been paid late, because I, as a business owner, I come last.
17
         Obviously, this can not continue indefinitely, and I am arranging a loan to pay the entire $4679
18
in sanctions this week. Proof of transmission of those moneys should be filed with the court by Friday

19 May 24th. Payment to Summer Mathena is being routed to her Attorney so filing a receipt from her may

take a little more time.
20
         I have been filing bankruptcies as a primary vocation since 1998. In that time I have filed more
21
than 3400 cases. This means 3400 former clients who for the most part have no other contact with an

22 attorney. So that also means 3400 people who may be calling or stopping by my office at any time to

23 ask a legal question or seek a referral. Because I feel a moral obligation to run my office under the

principal that I want to treat my clients the way I would like to be treated, I respond to all those requests.
24
I am working full time 5 ½ days a week to keep up with my work load. And it is fair to say that
25
sometimes little details fall through the cracks. All this is meant to say that I am doing the best I can to

help a lot of people for as little money as possible, including accepting a salary that is less than the

26

27                                                                    *Law Offices of*
                                                              **Joseph R. Jackson**
                                                              **230 Grant Rd Suite B23**
                                                              **East Wenatchee, WA 98802**
28   - 1 -                                                           **(509) 884-7400**

1 | average salary for recent law school graduates.

2

**Data Errors.**

3
4
5
6
7
8
9
10
11
12
13
14

The U. S. Trustee's office cites several cases were there were factual errors in filed schedules. In every case, I have the client fill out a questionnaire. They are also requested to provide tax returns and pay stubs. Because obtaining a lot of pay stubs can be significant effort, I usually ask them if their income has been steady so that their six month average would match their two month average. Unless the answer is no, I usually ask them for only the last two months pay stubs. I will then look at the pay stubs to see if they seem to match the income and deductions they listed on the questionnaire. How much time is spent analyzing the pay stubs to see if they disclose total average income over six months different than over two months varies from case to case depending on a variety of factors. As an example, in the case of Troy McMahon, he specified a specific salary that he received every pay check. This matched exactly the amount on his pay stubs. This is highly unusual because even most people on a salary get paid extra for overtime. So his stated income matched his pay stubs so I listed that as his income. If I had studied his year to date income, I would have seen an apparent discrepancy meriting further inquiry. But that would not have been conclusive, because we find that many times, year to date income stated on pay stubs is not really year to date income because it includes all income paid ou in that year even if the first pay stubs issued on, for example, January 5th includes all income earned in the full two weeks before that date.

15
16
17
18
19
20
21

In the world of clients who complain, want to get whatever they can without paying for it, and frequently give inaccurate information, getting every detail correct in every petition would be an impossible dream. In 2012, I filed 214 cases. Each case has 50 to 100 pieces of data. That data was supplied by the clients. I have no choice but to rely on the data the client supplies. If I have any reason to suspect the data is not accurate, I have a duty of further inquiry but expecting more than that is unrealistic. At a minimum it would require me to raise my fees to a level which would price many people out of the possibility of getting relief from their debts under the bankruptcy code. In my mind that is a denial of justice.

22

**Refunds In Other Cases.**

23
24
25

The monies paid by Donald Parker were refunded to him in check number 2723 which was written on August 25th, 2010. Lynette Vinson elected instead of a refund to have us re file her bankruptcy for her without additional charge when she was again eligible to do so which was done.

26
27
28

<i>Law Offices of</i><br>
<b>Joseph R. Jackson</b><br>
<b>230 Grant Rd Suite B23</b><br>
<b>East Wenatchee, WA 98802</b><br>
<b>(509) 884-7400</b>

- 2 -

1

2

**Suggested Resolution.**

3

4      If there is a problem here, it is lack of organization. Rather than referring this case for discipline

5  the court should require me to meet with Pete Roberts, the Bar Association practice expert and

   implement whatever reasonable suggestions he has to eliminate the failures described in the motion. The

6  court will undoubtedly set deadlines for receipt of monetary sanctions, but that is handled as soon as loan

7  fundings is completed, certainly this week.

8

9

10                                              /s/ Joseph R. Jackson
                                                JOSEPH R. JACKSON
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26                                                           *Law Offices of*
                                                **Joseph R. Jackson**
27                                                **230 Grant Rd Suite B23**
                                              **East Wenatchee, WA 98802**
28    - 3 -                                          **(509) 884-7400**